OPINION
{¶ 1} Defendant-Appellant, Samuel Lee Williams ("Appellant"), appeals a judgment of conviction by the Allen County Common Pleas Court finding him guilty of one count of complicity in aggravated arson, one count of complicity in aggravated robbery with a firearm specification, and five counts of complicity in aggravated murder with death penalty specifications.
{¶ 2} On appeal, Appellant claims that the indictment charging him failed to set forth the necessary elements of the charged offenses and that it was based upon insufficient evidence. Because charges of complicity may be stated in terms of the complicity statute, as was done herein, the indictment was facially valid; accordingly, Appellant is precluded from claiming that it was not supported by sufficient evidence.
{¶ 3} Appellant further contends that evidence at trial was not sufficient to support that he acted purposefully and with prior calculation and design. However, the evidence indicates that Appellant meticulously planned the events that transpired and made comments inferring his intent to kill. Therefore, the jury's finding was based upon sufficient evidence.
{¶ 4} The record also fails to support Appellant's claim that the jury received erroneous instructions from the trial court. Because jury instructions must be read as a whole, the jury was sufficiently instructed that they must find proof of a purpose to kill and not just the foreseeability of the result. Moreover, while potentially ambiguous, the instructions provided did not require the jury to unanimously find Appellant not guilty of complicity in aggravated murder before they could consider the lesser included offense of complicity in murder.
{¶ 5} Finally, Appellant maintains that he received ineffective assistance of counsel because his trial attorney did not request a limiting instruction in light of the State's use of an accomplice's prior testimony from a different trial. However, because the evidence from this testimony was merely cumulative of several other witnesses' testimony, failure to request a limiting instruction was not outcome determinative, precluding a finding of ineffective assistance of counsel.
{¶ 6} Facts and procedural history pertinent to this appeal are as follows. Appellant supplied several men, including Corey Summerhill, with cocaine to sell in the Lima, Ohio area. Sometime shortly after March 17, 2000, Summerhill's apartment was broken into, and a large quantity of cocaine, that he had yet to pay for, was stolen. After notifying Appellant of the theft, Appellant and Summerhill, among others, attempted to determine the thief's identity. Their investigation led them to believe that Rodney Bunley was the culprit.
{¶ 7} At the direction of Appellant, on March 29, 2000, a group of several men collectively organized and executed Appellant's plan to retrieve the stolen drugs. The plan involved setting Bunley's house on fire to drive him out with the drugs in tow. Once out of the house, three of the involved accomplices would rob him of the items in his possession at gunpoint, after being informed by a stationed observer which way he fled. At about 11:30 p.m. that evening, the fire was set by two lit glass bottles of gasoline or "Molotov cocktails" being thrown into the residence. A fire quickly erupted, and, although empty handed, Rodney Bunley managed to escape; however, five other occupants in the home were killed, including four children.
{¶ 8} After a police investigation, the Allen County Grand Jury returned a seven count indictment, charging Appellant with one count of complicity in aggravated arson, a felony of the first degree, in violation of R.C 2923.03(A)(2) and R.C. 2909.02(A)(1); one count of complicity in aggravated robbery, a felony of the first degree, in violation of R.C. 2923.03(A)(2) and R.C. 2911.01(A)(1), with a firearm specification pursuant to R.C. 2941.141(A); and five counts of complicity in aggravated murder, in violation of R.C. 2923.03(A)(2) and R.C.2903.01(B), with death penalty specifications.
{¶ 9} After a lengthy trial, Appellant was convicted of all charges and eventually sentenced to life without parole on February 28, 2001. This appeal followed, and Appellant asserts six assignments of error for our review. Because assignments one and two are sufficiently related, we will discuss them together.
 Assignment of Error I
{¶ 10} "The indictment fails to set forth the necessary elements of the charged offenses in violation of the Fifth, Sixth, Eighth andFourteenth Amendments of the U.S. Constitution and Article I, Section 10
of the Ohio Constitution."
 Assignment of Error II
{¶ 11} "The indictment failed to state all elements required to be proven to obtain a finding of guilt as to the charges of aggravated murder and the accompanying capital specifications, thus denying the appellant his right to have a grand jury determine probably cause on each and every element of the offense or specification charged."
{¶ 12} Within his first and second assignments of error, Appellant maintains that the charging indictments failed to specify all of the essential elements necessary to notify him of the charged offenses and to ensure that the grand jury returned indictments based upon a finding of probable cause on each element of the offenses. Based upon the following rationale, however, we find that the indictments were sufficient.
{¶ 13} Crim.R. 7(B) provides that an indictment shall contain a statement that the defendant has committed a specified public offense. Further, the statement may be made "in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged." An indictment must also "state the numerical designation of the statute that the defendant is alleged to have violated."
{¶ 14} The indictments in this case specified that Appellant was charged with complicity to commit aggravated arson, complicity to commit aggravated robbery with a firearm specification, and complicity to commit aggravated murder with death penalty specifications in violation of R.C.2923.03(A)(2). R.C. 2923.03(F) provides that "[a] charge of complicity may be stated in terms of this section, or in terms of the principal offense." R.C. 2923.03(A) states, in relevant part, that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: * * * [a]id or abet another in committing the offense[.]" Each of the instant indictments for complicity to commit aggravated arson, robbery, and murder mirrored the language of this section by stating, respectively, that Appellant:
 "did, acting with the kind of culpability required for the commission of an offense, aid or abet another in committing the offense, to-wit: Aggravated Arson, in violation of Ohio Revised Code section 2909.02(A)(1); in violation of the Ohio Revised Code section 2923.03(A)(2), a felony of the 1st degree, and against the peace and dignity of the State of Ohio[;]
 "did, acting with the kind of culpability required for the commission of an offense, aid or abet another in committing the offense, to-wit: Aggravated Robbery, in violation of Ohio Revised Code section 2911.01(A)(1); * * * The Grand Jurors further find and specify that * * * [Appellant] or one of his accomplices, had a firearm, as defined in Section 2923.11 of the Ohio Revised Code, on or about his person or under his control while committing Aggravated Robbery; as listed in Section 2941.141(A) of the Ohio Revised Code; in violation of the Ohio Revised Code Section 2923.03(A)(2), a felony of the 1st degree, and against the peace and dignity of the State of Ohio[; and]
 "did, acting with the kind of culpability required for the commission of an offense, aid or abet another is committing the offense, to-wit: Aggravated Murder, in violation of Ohio Revised Code section 2903.01(B); * * * the Grand Jurors further find and specify that the aggravated murder was committed while the * * * [Appellant] was committing, attempting to commit, or fleeing immediately after committing or attempting to commit Aggravated Arson, and the * * * [Appellant] committed the aggravated murder with prior calculation and design; in violation of the Ohio Revised Code Section 2923.03(A)(2), and against the peace and dignity of the State of Ohio."
{¶ 15} Each of the five counts of complicity to commit aggravated murder with death penalty specifications were worded identically to the relevant portion quoted above.
{¶ 16} All seven counts of the indictments herein contained the relevant statutory language to charge complicity. The complicity statute allows an indictment to either specify the elements of complicity itself or specify the elements of the principal offenses. The State chose the former and mirrored the language of the complicity statute in addition to designating the applicable Code sections for the underlying offenses. Despite Appellant's contention, the elements of the substantive offenses need not be recited. Moreover, Appellant requested and received a bill of particulars after the indictments were issued, which clearly put him on notice of the charges against him.
{¶ 17} For these reasons, we find Appellant's first two assignments of error to be without merit, and they are overruled.
 Assignment of Error III
{¶ 18} "There was insufficient evidence presented to the grand jury to charge the appellant with the element of prior calculation and design."
{¶ 19} Appellant contends in his third assignment of error that the evidence presented before the grand jury was insufficient to support its probable cause finding that he acted with prior calculation and design, a necessary element for an aggravated murder death specification. As such, Appellant argues that the death penalty specifications in the indictments should have been dismissed. However, "[t]he grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered." An indictment that is valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence. Accordingly, because we have already determined that the indictments in this case were facially valid, Appellant is precluded from challenging the sufficiency of the evidence before the grand jury.
{¶ 20} Therefore, Appellant's third assignment of error is overruled.
 Assignment of Error IV
{¶ 21} "The evidence presented at trial is insufficient to support either the element of "prior calculation and design" or the element of "purposeful" and is thereby insufficient to support the convictions of aggravated murder and the capital specifications."
{¶ 22} To reverse a conviction for insufficient evidence, we must be persuaded, after viewing all of the evidence in a light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. In order for Appellant to be convicted of complicity to commit aggravated murder with a death penalty specification, the State must prove that he aided or abetted another in purposefully causing the death of a person with prior calculation and design while committing, attempting to commit, or while fleeing immediately after committing or attempting to commit aggravated arson or aggravated robbery. Appellant argues that the evidence presented at trial was insufficient to support his conviction of five counts of complicity to commit aggravated murder and the accompanying death penalty specifications because no evidence establishes that the victims were purposefully killed with prior calculation and design.
{¶ 23} As a culpable mental state, "[a] person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.
{¶ 24} The phrase "prior calculation and design," on the other hand, has not been specifically defined, and the Ohio Supreme Court, while providing relevant factors to consider, has stated that a "bright-line test that emphatically distinguishes between the presence or absence of `prior calculation and design'" is not possible. Instead, each case turns on the particular facts and evidence presented at trial. Although, notable guidelines to consider when reaching such a determination include: "(1) Did the accused and victim know each other, and if so, was that relationship strained? (2) Did the accused give thought or preparation to choosing the murder weapon or murder site? (3) Was the act drawn out or `an almost instantaneous eruption of events'?" Moreover, where the evidence at trial indicates the presence of "sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified." Based upon these guidelines, we now turn to discuss the evidence adduced at the trial in this case.
{¶ 25} The testimony indicates that Appellant advanced a large quantity of cocaine to Corey Summerhill. The cocaine, however, was stolen out of Summerhill's apartment prior to sale. Summerhill immediately notified Appellant of the theft, to which Appellant responded that he "was too broke to hear that." A few days later, after conducting an informal investigation as to who may have stolen the drugs, Appellant informed Summerhill that he had a plan related to the stolen cocaine.
{¶ 26} The testimony further shows that Appellant contacted several other individuals to assist in implementing his plan to retain possession of the stolen drugs. Evidence supports that the men convened at Appellant's stepfather's home just hours prior to the incident. At that time, Appellant gave instructions to each of the men as to their individual roles in the crime. Multiple witnesses testified that Appellant was in charge of the events that transpired on the night in question.
{¶ 27} The evidence at trial indicates that Appellant instructed each of the men in the following way: Appellant told his stepfather to fill up a gas can with premium gas. He then hired and instructed Michael Wright to throw two "Molotov cocktails," into the Bunley residence. Appellant informed Wright of the location of the house, that he would drop him off near there, and then pick him back up at a different location once the bombing was completed. Martice Boddie, who lived just down the street from the Bunley residence, was instructed to watch for Bunley to run out of the burning house with the stolen drugs. Boddie was told to direct three other men, including Summerhill, who would be waiting in a nearby car, of Bunley's direction of course. Appellant provided these three men with rubber gloves, guns, and stockings to cover their faces and instructed them to follow Bunley, hold him at gunpoint, and recover the stolen drugs. These men were then told to drop off the gloves, guns, and stockings in a parked car at another accomplice's house and flee the scene. At this time, upon someone's admonition that other people would be in the Bunley residence, Appellant replied: "fuck `em."
{¶ 28} After Appellant provided the instructions to each participant, the men adjourned and began implementing the plan. The evidence shows that when the two firebombs were thrown into the house, it immediately went up in flames, resulting in five deaths. After the fire, the participants met at another residence where Appellant was overheard discussing Wright's payment for the bombing. Additionally, Appellant stated that his plan ran "just like a football play" and that "premium is good gas because it burns good." Further testimony revealed that Appellant said that the incident would teach people a lesson to not steal from him and again remarked that he "did not give a fuck who was in the house." Appellant then instructed as to which car each of the men would depart in, and, in the days following the incident, instructed the men how to respond to any ensuing police investigation.
{¶ 29} After reviewing the testimony and evidence adduced at trial, we find that a rational trier of fact could have found that Appellant acted purposefully and with prior calculation and design beyond a reasonable doubt. The evidence of Appellant's calculated planning of the events that transpired on the night in question and his comments prior to and following the incident weigh heavily upon our finding, as intent "may be inferred from the circumstances surrounding the crime." Accordingly, Appellant's fourth assignment of error is overruled.
 Assignment of Error V
{¶ 30} "Erroneous jury instructions deprived the appellant of his right to a fair trial."
{¶ 31} For his fifth assignment of error, Appellant contends that the phraseology utilized for two separate portions of the jury instructions deprived him of a fair trial. We disagree.
{¶ 32} First, Appellant argues that the trial court erroneously instructed the jury on causation:
{¶ 33} "Cause is an act which directly produces the death of another and without which it would not have occurred.
{¶ 34} "A death is the result of an act or failure to act when it is produced directly by the act or failure to act in a natural and continuous sequence and would not have occurred without the act or failure to act.
{¶ 35} "A causal responsibility of the defendant for an unlawful act is not limited to its immediate or most obvious result. He is responsible for the natural and logical results that follow, in the ordinary course of events, from an unlawful act."
{¶ 36} Appellant contends that this instruction permitted the jury to convict him for aggravated murder based on a finding of less than specific intent to cause the death of another. Specifically, Appellant claims that the instructions allowed the jury to convict him based upon a mere foreseeability of the result.
{¶ 37} The Ohio Supreme Court has recognized that the use of a foreseeability instruction in aggravated murder cases is questionable. However, the use of an instruction allowing for a foreseeability component does not require reversal where "the instructions as a whole make clear that the jury must find purpose to kill in order to convict."
{¶ 38} In the case sub judice, the trial court provided the jury with extensive instructions on the State's burden of proof and the requirement to prove purpose to kill before the alleged foreseeability instruction was given to the jury. Thus, the instructions as a whole made clear that the jury was required to find purpose to kill in order to convict. Accordingly, even if the instant jury instruction somehow invoked a foreseeability alternative, we find any potential error to be harmless beyond a reasonable doubt and reject Appellant's contrary contention.
{¶ 39} Next, Appellant avers that the trial court's instruction concerning the lesser included offense of murder constituted prejudicial error. The instruction provided as follows:
 "If you find that the State proved beyond a reasonable doubt all the essential elements of the defense of complicity in aggravated murder as alleged in counts 3, 4, 5, 6, and 7, your verdict must be guilty as charged. However, if you find that the State failed to prove beyond a reasonable doubt all the essential elements of complicity in aggravated murder, then your verdict must be not guilty of that offense, and in that event, you will continue your deliberations to decide whether the State has proved beyond a reasonable doubt all the essential elements of the lesser included offense of complicity in murder in counts 3, 4, 5, 6, and 7."
{¶ 40} The court then proceeded to explain the necessary elements constituting the lesser offense of complicity in murder.
{¶ 41} Notably, Appellant did not object at trial to the above quoted instruction and, as such, has forfeited all but plain error. The Ohio Supreme Court has recently set forth a tripartite test to determine whether plain error is present: (1) there must be an error; (2) the error must be plain, i.e., the error must be an obvious defect; and (3) the error must have infringed upon substantial rights by affecting the outcome of the trial.
{¶ 42} Herein, Appellant claims, based upon State v. Thomas, that the aforementioned jury instruction imposed a requirement that the jury must unanimously reject the aggravated murder option before considering the lesser included offense. However, Appellant's reliance on State v.Thomas is misplaced. While the court therein specifically rejected any instruction which implies to the jury that it must determine unanimously that the defendant is not guilty of the charged offense before it may consider a lesser included offense, it upheld the actual instruction utilized because it was merely "ambiguous" rather than prejudicially erroneous and had "negligible coercive potential." The instructions in this case were nearly identical to the instructions upheld in Thomas
and, thus, did not prejudice Appellant. Therefore, we find no error in the trial court's instructions, which obviates the need to consider the remaining factors of the plain error analysis.
{¶ 43} For these reasons, we reject Appellant's contentions with respect to his fifth assignment of error, and it is overruled.
 Assignment of Error VI
{¶ 44} "The failure to object to improper jury instructions and the failure to request a proper jury instruction deprived the appellant of his right to effective assistance of counsel."
{¶ 45} Appellant maintains in his final assignment of error that he was deprived of his right to effective assistance of counsel. A claim for ineffective assistance of counsel requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different: "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial.
{¶ 46} In this case, Appellant claims that his counsel's failure to object to the jury instructions concerning the lesser included offense of murder deprived him the right to effective counsel. However, as found above, the jury instructions were not in error. Accordingly, trial counsel's failure to object does not constitute ineffective assistance of counsel.
{¶ 47} Appellant further argues that his counsel was ineffective for not requesting a limiting instruction relating to the use of Corey Summerhill's testimony from a prior trial. At the trial herein, Summerhill was declared a hostile witness, and at that point, the prosecution utilized his prior testimony from Martice Boddie's trial by reading the questions asked at that time and having Summerhill read his previously given answers. Appellant's trial counsel objected to the form of questioning but did not request the court to admonish the jury that the testimony could not be used as substantive evidence.
{¶ 48} Regardless of whether a limiting instruction should have been requested, we find that Appellant has not met his burden to prove that the lack of an instruction was outcome determinative. Not including Summerhill, three of Appellant's accomplices on the night in question testified against him at trial. Moreover, Summerhill's neighbors and girlfriend also testified. These witnesses reiterated and corroborated the testimony read into the record by Summerhill. Accordingly, Summerhill's testimony was cumulative of the other testimony presented. As such, we do not find that a reasonable probability exists that the outcome at trial would have been different had a limiting instruction been provided.
{¶ 49} For these reasons, Appellants' sixth assignment of error is overruled.
{¶ 50} Having found no error prejudicial to Appellant herein, in the particulars assigned and argued, the judgment of the trial court is affirmed.
Judgment affirmed.
HADLEY and BRYANT, JJ., concur.